**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
EWING CITIZENS FOR CIVIL      :
RIGHTS, INC., et al.,         :
                              :    CIVIL ACTION NO. 05-1620 (MLC)
      Plaintiffs,             :
                              :    MEMORANDUM OPINION
      v.                      :
                              :
TOWNSHIP OF EWING, et al.     :
                              :
      Defendants.             :
_____:
```

**COOPER, District Judge**

Ewing Citizens for Civil Rights, Inc. ("ECCR") and James J. Sanocki (collectively, the "Plaintiffs") commenced this action against the Township of Ewing ("Township") , the Mayor of Ewing, certain members of  the Township's Council, and a Township construction official (collectively, the "Defendants").  (Compl., at ¶¶ 1-14.)  Plaintiffs allege that Defendants enacted certain ordinances that violate their rights under (1) the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 et seq., (2) 42 U.S.C. § ("Section") 1983 and the Fifth and Fourteenth Amendments to the United States Constitution, (3) the New Jersey Constitution, (4) the New Jersey Law Against Discrimination, and (5) New Jersey's Municipal Land Use Law.  (Id. at ¶¶ 26-62.)

Plaintiffs move for summary judgment, in effect, pursuant to Federal Rule of Civil Procedure ("Rule") 56.  (Dkt. entry no. 28.)  Defendants cross-move for summary judgment, in effect, pursuant to Rule 56.  (Dkt. entry no. 30.)  Plaintiffs did not

file opposition to Defendants' cross motion, but do rely on their
own motion.  The Court, for the reasons stated herein, will (1)
deny the part of Plaintiffs' motion seeking summary judgment as
to the federal claims, (2) grant the part of Defendants' cross
motion seeking summary judgment as to the federal claims, (3)
deny without prejudice the part of the Plaintiffs' motion seeking
summary judgment as to the state claims, and (4) deny without
prejudice the part of Defendants' cross motion seeking summary
judgment as to the state claims.

### BACKGROUND

The Township's Mayor and Council received complaints from
Township residents regarding "excessive noise, public
intoxication, underage drinking, garbage, overcrowding, property
maintenance and landlords that did not reside in [the Township]"
in connection with rental housing units occupied by college
students.  (Pl. Stmt. of Uncontested Mat. Facts, at ¶ 8; Defs.
Stmt. Of Undisp. Mat. Facts, at ¶ 19.)  In response, the Township
enacted several ordinances.  (See Pl. Stmt. of Uncontested Mat.
Facts, at ¶ 8.)  First, on October 12, 2004, the Township's
Council adopted Ordinance 4-15.  (Defs. Stmt. Of Undisp. Mat.
Facts, at ¶ 1.)  Ordinance 4-15 amended the Township's property
maintenance code ("PMC"), which adopted the 1998 International
Property Maintenance Code.  (Id. at ¶ 2; Pl. Stmt. of Uncontested
Mat. Facts, at ¶ 14.).  Specifically, Ordinance 4-15 (1)

2

increased the minimum square footage requirements for non-bedroom space to 100 square feet per occupant, and (2) "increased the minimum square footage requirements for every room occupied for sleeping purposes from 70 square feet for one occupant to 100 square feet and from 50 square feet for each additional occupant to 75 square feet." (Defs. Stmt. Of Undisp. Mat. Facts, at ¶¶ 3-4; see Pl. Stmt. of Uncontested Mat. Facts, at ¶ 14.) Ordinance 4-15 applies to all "occupants" of rental properties. (Defs. Stmt. Of Undisp. Mat. Facts, at ¶ 5; see Pl. Stmt. of Uncontested Mat. Facts, at ¶ 14.) It defines "occupant" as a person 18-years-old or older. (Defs. Stmt. Of Undisp. Mat. Facts, at ¶ 5; see Pl. Stmt. of Uncontested Mat. Facts, at ¶ 14.) Thus, with respect to rental unit occupants who are under the age of 18, the minimum square footage requirements of the PMC apply. (Defs. Stmt. Of Undisp. Mat. Facts, at ¶ 5.) Plaintiffs assert that this ordinance has reduced the number of tenants that can be housed at their rental properties. (Pl. Stmt. of Uncontested Mat. Facts, at ¶ 15.)

The Township's Council adopted Ordinance 4-17 on October 26, 2004. (Defs. Stmt. Of Undisp. Mat. Facts, at ¶ 6.) Ordinance 4-17 requires (1) all residential rental units to register with the municipal clerk's office, and (2) residential rental properties with less than three units to be licensed and inspected annually and upon a change in occupancy. (Id. at ¶ 7; Pl. Stmt. of

3

Uncontested Mat. Facts, at ¶ 20.)  A license may be revoked under this ordinance after notice, in the form of a written complaint, and a hearing before the Township's Council.  (Defs. Stmt. Of Undisp. Mat. Facts, at ¶ 11; <u>see</u> Pl. Stmt. of Uncontested Mat. Facts, at ¶ 21 (noting that Ordinance 4-17 "provides a basis to revoke the rental license on grounds that are not considered or required by the Municipality in the initial grant of the license").)

The Township's Council adopted Ordinance 5-07 on January 25, 2005.  (Defs. Stmt. Of Undisp. Mat. Facts, at ¶ 12; <u>see</u> Pl. Stmt. of Uncontested Mat. Facts, at ¶ 19.)  Ordinance 5-07 requires all residential rental properties located in certain zoning districts to provide one off-street parking space for every licensed driver residing at the property.  (Defs. Stmt. Of Undisp. Mat. Facts, at ¶ 12; Pl. Stmt. of Uncontested Mat. Facts, at ¶ 19.)  Plaintiffs assert that this ordinance was "intended to apply to pre-existing rental units such that they would not be granted licenses nor [certificates of occupancy] if they did not have the appropriate parking on site now required."  (Pl. Stmt. of Uncontested Mat. Facts, at ¶ 19.)  Defendants, in contrast, assert that as a zoning law, "Ordinance 05-07 is enforced against new uses, and pre-existing uses when there is a change or intensification of use, consistent with New Jersey land use law."  (Defs. Stmt. Of Undisp. Mat. Facts, at ¶ 14.)  Defendants further assert that (1)

4

an aggrieved party can appeal the Township's application of Ordinance 5-07 if such party believes the ordinance was not applied in accordance with New Jersey land use law, and (2) a property owner can apply for a variance from the municipal planning or zoning boards with respect to Ordinance 5-07.  (Defs. Stmt. Of Undisp. Mat. Facts, at ¶ 14-15.)

The Township's Council, on March 8, 2005, enacted Ordinance 5-11, which amended Ordinance 4-15 by changing the required ceiling height of habitable rooms from 7 and 1/2 feet to 7 feet. (Id. at ¶ 17; Pl. Stmt. of Uncontested Mat. Facts, at ¶ 14 (noting that Ordinance 4-15 requires "a ceiling height of seven feet that ha[s] to occupy at least half of the floor area of every habitable room").)  Similarly, on July 12, 2005, the Township's Council amended Ordinance 4-17 by enacting Ordinance 5-27.  (Defs. Stmt. Of Undisp. Mat. Facts, at ¶ 18.) Specifically, Ordinance 5-27 deleted certain requirements pertaining to the information presented with a license application, and revised a requirement that a license application include the name of an agent residing in Mercer County to now require that a license application list the name of an agent residing within 25 miles of the Township.  (Id.; Pl. Stmt. of Uncontested Mat. Facts, at ¶ 20.)

Plaintiffs challenge these ordinances because, inter alia, they "intentionally discriminate in the provision of housing

based on ownership/rental status as well as age" and "there is no rational basis for the distinction between the minimum safety requirements set forth for owner occupied properties and rental properties." (Pl. Stmt. of Uncontested Mat. Facts, at ¶¶ 22-23.) Defendants contend that the ordinances were enacted to protect the health, safety, and welfare of the Township's citizens. (Defs. Stmt. Of Undisp. Mat. Facts, at ¶ 16.)

## DISCUSSION

### I.   Summary Judgment Standard

Rule 56(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  The party moving for summary judgment bears the initial burden of showing that there is no genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the movant has met this prima facie burden, the non-movant "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).  A non-movant must present actual evidence that raises a genuine issue of material fact and may not rely on mere allegations.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The Court must view the evidence in the light most favorable to the non-movant when deciding a summary judgment motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  At the summary judgment stage, the Court's role is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson, 477 U.S. at 249.  Under this standard, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient [to defeat a Rule 56(c) motion]; there must be evidence on which the jury could reasonably find for the [non-movant]."  Id. at 252.  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Id. at 247-48 (emphasis in original).  A fact is material only if it might affect the action's outcome under governing law.  Id. at 248.  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Id. at 249-50 (internal citations omitted).

A movant is not automatically entitled to summary judgment simply because the non-movant fails to oppose the motion.

7

Anchorage Assocs. v. V.I. Bd. of Tax Rev., 922 F.2d 168, 175 (3d Cir. 1990).  Instead, Rule 56(e) provides that the Court may grant the unopposed motion "if appropriate".  Id.; Carp v. Internal Rev. Serv., No. 00-5992, 2002 U.S. Dist. LEXIS 2921, at *7 (D.N.J. Jan. 28, 2002) ("Even where the non-moving party has failed to establish a triable issue of fact, summary judgment will not be granted unless 'appropriate.'").  An unopposed motion is appropriately granted when the movant is entitled to judgment as a matter of law.  Anchorage Assocs., 922 F.2d at 175.

"If the non-moving party fails to oppose the motion for summary judgment by written objection, memorandum, affidavits and other evidence, the Court 'will accept as true all material facts set forth by the moving party with appropriate record support.'"  Carp, 2002 U.S. Dist. LEXIS 2921, at *6-*7 (citations omitted).  Further, even if a record contains facts that might provide support for a non-movant's position, "the burden is on the [non-movant], not the court, to cull the record and affirmatively identify genuine, material factual issues sufficient to defeat a motion for summary judgment."  Morris v. Orman, No. 87-5149, 1989 U.S. Dist. LEXIS 1876, at *25-*26 (E.D. Pa. Mar. 1, 1989).  Accordingly, when a plaintiff fails to respond to a defendant's motion for summary judgment, the Court need only examine the pleadings and any evidence attached to the defendant's motion.  Atkinson v. City of Phila., No. 99-1541, 2000 U.S. Dist. LEXIS

8500, at *7 (E.D. Pa. June 20, 2000).  However, we have carefully
examined all papers filed by both sides relative to the pending
motion and cross motion for summary judgment.

## II.  Summary Judgment Standard Applied Here[1]

### A.   FHA

The FHA makes it unlawful, <u>inter</u> <u>alia</u>,

> a) To refuse to sell or rent after the making of a bona
> fide offer, or to refuse to negotiate for the sale or
> rental of, or otherwise make unavailable or deny, a
> dwelling to any person because of race, color,
> religion, sex, <u>familial status</u>, or national origin.

> (b) To discriminate against any person in the terms,
> conditions, or privileges of sale or rental of a
> dwelling, or in the provision of services or facilities
> in connection therewith, because of race, color,
> religion, sex, <u>familial status</u>, or national origin.

42 U.S.C. § 3604(a)-(b) (emphasis added).  The FHA defines
"familial status" as one or more individuals under the age of 18
who are domiciled with a parent, a person having legal custody
over such individuals, or a designee with written permission from

---

[1] The Court notes that Defendants initially argue that
Plaintiffs do not have standing to bring this action because they
fail to satisfy the injury-in-fact requirement, which flows from
Article III of the United States Constitution.  (Defs. Br., at 2-
11.)  Although Plaintiffs have not expressly set forth the
specific ways that they and their tenants have been harmed by the
ordinances at issue, the Court concludes that they have a
"sufficient stake" in the controversy.  <u>See</u> <u>Pub. Interest</u>
<u>Research Group, Inc. v. Powell Duffryn Terminals, Inc.</u>, 913 F.2d
64, 70 (3d Cir. 1990).  Further, the Court notes that the Supreme
Court has directed courts to give standing under the FHA
"generous construction".  <u>Easthampton Ctr., LLC v. Easthampton</u>
<u>Twp.</u>, 155 F.Supp.2d 102, 113 (D.N.J. 2001).

such individual's parent or person having legal custody.  42 U.S.C. § 3602(k).  Further, it permits any "aggrieved person" to commence an action alleging violations of the act within 2 years of the occurrence or termination of an allegedly discriminatory housing practice.  42 U.S.C. § 3613(a)(1).

A plaintiff states a prima facie case of discrimination under the FHA by showing either intentional disparate treatment or disparate impact.  United States v. Branella, 972 F.Supp. 294, 298 (D.N.J. 1997).  A plaintiff can show discriminatory intent through direct or indirect evidence.  Id.   In the absence of direct evidence, however, the Court must apply the burden shifting approach set forth in McDonnell Douglas Corp. v. Green, which describes the proper framework for evaluating an intentional disparate treatment claim under Title VII of the Civil Rights Act ("Title VII").  Id. (citing McDonnell Douglas Corp., 411 U.S. 792, 802 (1973)).  Under this approach, the plaintiff must demonstrate that (1) he or she is a member of a protected class, (2) he or she applied for and was qualified to rent a particular unit, (3) he or she was rejected or otherwise treated adversely, and (4) the unit remained available after the rejection or adverse treatment.  See Branella, 972 F.Supp. at 299 n.7.  "Sufficient evidence with respect to these factors raises a rebuttable presumption of discriminatory intent and shifts the burden to the defendant, who must articulate a legitimate non-

10

discriminatory reason for rejecting the prospective tenants."
Id.  If the defendant proffers such a non-discriminatory reason,
the burden shifts back to the plaintiff to offer some evidence
indicating that the defendant's reason was actually pretext.  Id.

To make a prima facie showing of disparate impact, the
plaintiff must demonstrate that the defendant's policies or
actions have a greater adverse impact on a protected group than
others.  Lapid-Laurel, L.L.C. v. Zoning Bd. of Adj., 284 F.3d
442, 466-67 (3d Cir. 2002) (noting that the Third Circuit applies
Title VII's disparate impact analysis when addressing a disparate
impact claim under the FHA).  If the plaintiff establishes a
prima facie case, the burden shifts to the defendant to (1) set
forth a legitimate non-discriminatory reason for the policy or
action, and (2) demonstrate that no less discriminatory
alternatives were available.  Id. at 467.  Thus, the plaintiff
need not show any discriminatory purpose or intent to establish a
disparate impact claim under the FHA.  See Branella, 972 F.Supp.
at 298.

Ordinance 4-15, as discussed in more detail above, increases
the square footage requirements for bedroom and non-bedroom space
in rental units occupied by persons 18 years of age or older.
(See Defs. Stmt. Of Undisp. Mat. Facts, at ¶¶ 3-5; see Pl. Stmt.
of Uncontested Mat. Facts, at ¶ 14.)  Further, Ordinance 5-07
requires all residential rental properties located in certain

zoning districts to provide one off-street parking space for
every licensed driver residing at the property.  (Defs. Stmt. Of
Undisp. Mat. Facts, at ¶ 12; Pl. Stmt. of Uncontested Mat. Facts,
at ¶ 19.)  Plaintiffs assert that "Ordinance 4-15 and Ordinance
5-07 have intentionally established higher barriers and
requirements for the use of existing housing and created higher
costs for the provision of new housing for those that rent and
for those that are over 18 years of age in Ewing."  (Pl. Br., at
15.)  Thus, Plaintiffs argue that, inter alia, these ordinances
(1) "intentionally discriminate in the provision of rental housing
based on familial status", and (2) disparately impact unrelated
groups of people by reducing the amount of housing available to
such groups.  (Compl., at ¶¶ 27-30.)  In contrast, Defendants
contend that the Township adopted Ordinance 4-15 and Ordinance 5-
07 to promote safety in the community and in response to complaints
from Township residents about overcrowding, noise, unkempt
properties, and parking at rental units.  (Defs. Br., at 14.)

The Plaintiffs cannot make a prima facie showing that either
Ordinance 4-15 or Ordinance 5-07 intentionally discriminates
against or has a disparate impact on a protected group.  See
Branella, 972 F.Supp. at 299 n.7 (explaining that to make a prima
facie showing of discriminatory intent, the plaintiff must
demonstrate membership in a protected group); Lapid-Laurel,
L.L.C., 284 F.3d at 466-67 (noting that to make a prima facie
showing of disparate impact, the plaintiff must demonstrate that

12

the defendant's policies adversely impact a protected group). Although Ordinance 4-15 expressly prohibits persons 18 years of age or older from renting properties that do not meet the square footage requirements, such persons are not members of a protected class under the FHA.  Instead, the FHA prohibits ordinances that deny housing to parents with children <u>under</u> the age of 18.  It does not provide similar protections for groups or families with members over such age.  <u>See</u> 42 U.S.C. § 3602(k) (defining "familial status" under the FHA).  Similarly, Ordinance 5-07, which places an additional parking requirement on potential tenants with a valid driver's license, does not in any way prohibit families with children from occupying the residence. Age also is not a protected characteristic under the FHA, and Plaintiffs do not assert that the ordinances at issue discriminate against persons on the basis of race, color, religion or sex.  Therefore, the Court concludes that Ordinance 4-15 and Ordinance 5-07 do not discriminate "in the terms, conditions, or privileges of sale or rental" of housing on the basis of familial status, or any other protected characteristic, and thus, summary judgment in Defendants' favor is appropriate on Plaintiffs' FHA claim.  <u>See</u> 42 U.S.C. § 3604(a)-(b).

**B.   Section 1983**

A plaintiff asserting civil rights violations under Section 1983 must establish that the defendant acted under color of state

law to deprive him or her of a right secured by the United States Constitution or the laws of the United States.  Groman v. Twp. of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995).  Section 1983 does not create substantive rights, but instead provides a remedy for the violation of rights created by other federal laws.  Id.; Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  For a Section 1983 claim to survive a motion for summary judgment, there must be a genuine issue of fact as to whether the defendant (1) acted under color of state law; or (2) deprived the plaintiff of a federal right.  Groman, 47 F.3d at 633.

"The color of state law element is a threshold issue; there is no liability under [Section] 1983 for those not acting under color of law."  Id. at 638.  Further, officials may be liable under Section 1983 for the acts of those over whom they have supervisory responsibility.  However, civil rights liability cannot be predicated solely on the doctrine of respondeat superior.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Personal involvement in the alleged wrong-doing must be shown.  Id.  Defendants here, the Township and its mayor, Council members, and one of its construction officials, were each acting under the color of state law at all times relevant to the complaint.

Once it has been established that the defendant acted under color of state law, the Court must identify the federal right the defendant allegedly violated.  See Groman, 47 F.3d at 633.  As

14

discussed in more detail below, this Court finds that (1) Defendants have shown that no genuine issues of material fact exist with respect to Plaintiffs' Section 1983 claims, and (2) Plaintiffs have not demonstrated that Defendants violated any of their constitutional rights.  Thus, Defendants cannot be held liable under Section 1983.  See Martino v. County of Camden, No. 04-5300, 2005 U.S. Dist. LEXIS 15622, at *41 (D.N.J. July 26, 2005) (explaining that because no established constitutional right was violated, defendants could not be held liable under Section 1983).

### 1.   **Fourteenth Amendment Due Process Claims**

The Due Process Clause of the Fourteenth Amendment provides, "nor shall any State deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV. The Due Process Clause protects individuals against two types of government action.

> So-called "substantive due process" prevents the government from engaging in conduct that "shocks the conscience," or interferes with rights "implicit in the concept of ordered liberty".  When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner.  This requirement has traditionally been referred to as procedural due process.

United States v. Salerno, 481 U.S. 739, 746 (1987) (internal cites omitted) (discussing Fifth Amendment's due process clause, which contains identical language).  To prevail on a substantive

15

due process claim, the plaintiff must demonstrate that he or she has a "fundamental" property interest or right under the United States Constitution. <u>Hill v. Bor. of Kutztown</u>, 455 F.3d 225, 235 (3d Cir. 2006). In analyzing a procedural due process claim, the Court must first determine whether the plaintiff was deprived of a liberty or property interest protected by due process. <u>Logan v. Zimmerman Brush Co.</u>, 455 U.S. 422, 428 (1982); <u>see</u> <u>Atkins v. Parker</u>, 472 U.S. 115, 128 (1985).

Liberty interests protected by the Due Process Clause of the Fourteenth Amendment may arise under the clause itself, a state statute, or a regulation. <u>Muhammad v. Fauver</u>, No. 79-3121, 1989 U.S. Dist. LEXIS 7324, at *43 (D.N.J. July 28, 1989). The Court, if concluding that the plaintiff was deprived of a liberty or property interest, must determine what process is necessary. <u>Logan</u>, 455 U.S. at 428; <u>see</u> <u>Atkins</u>, 472 U.S. at 128. Procedural due process is a flexible requirement and "calls for such procedural protections as the particular situation demands." <u>Mathews v. Eldridge</u>, 424 U.S. 319, 334 (1976) (cite omitted).

Plaintiffs assert that the ordinances at issue violate their substantive due process rights because they "arbitrarily and irrationally impinge on a landowner's use and enjoyment of property." (Pl. Br., at 16.) Further, Plaintiffs allege that (1) the ordinances were motivated by bias, bad faith, and improper motive, and (2) there is no rational basis for the

ordinances.  (Id. at 17.)  However, municipal land use decisions only violate the substantive component of the due process clause when they amount to an abuse of official power that "shocks the conscience".  Blain v. Radnor Twp., 167 Fed.Appx. 330, 333 (3d Cir. 2006); Thornbury Noble, Ltd. v. Thornbury Twp., 112 Fed.Appx. 185, 188 (3d Cir. 2004); Lindquist v. Buckingham Twp., 106 Fed.Appx. 768, 773 (3d Cir. 2004); United Artists Theatre Cir., Inc. v. Warrington Twp., 316 F.3d 392, 401 (3d Cir. 2003) ("[W]e see no reason why the present case should be exempted from the Lewis shocks-the-conscience test simply because the case concerns a land use dispute.").  Conscience shocking activities "violate the decencies of civilized conduct and [are] so brutal and offensive that they [do] not comport with traditional ideas of fair play and decency."  Thornbury Noble, Ltd., 112 Fed.Appx. at 188 (internal quotations and citations omitted); see United Artists Theatre Cir., Inc., 316 F.3d at 400 (noting that the shocks-the-conscience standard only encompasses egregious official conduct).  Application of the shocks-the-conscience standard prevents the Court "from being cast in the role of a 'zoning board of appeals.'"  United Artists Theatre Cir., Inc., 316 F.3d at 402.

Even assuming Plaintiffs can demonstrate that the ordinances at issue are arbitrary and irrational, Plaintiffs' substantive due process claim still must fail because arbitrary and

irrational government action does not rise to the level of violating "the decencies of civilized conduct."  Thornbury Noble, Ltd., 112 Fed.Appx. at 188.  Moreover, "[l]and-use decisions are matters of local concern and such disputes should not be transformed into substantive due process claims based only on allegations that government officials acted with 'improper motives'" or in bad faith.  United Artists Theatre Cir., Inc., 316 F.3d at 402; see Blain, 167 Fed.Appx. at (concluding, inter alia, that the Township's improper denial of a subdivision plan did not rise to the level of conscience shocking); Lindquist, 106 Fed.Appx. at 774 (noting that even a bad faith violation of state law does not support a substantive due process claim in a land-use dispute).  Thus, Plaintiffs have not alleged or shown conduct by the Defendants that "shocks the conscience" or that "interferes with rights implicit in the concept of ordered liberty."  See Salerno, 481 U.S. at 746.  Accordingly, the Court will grant the part of Defendants' cross motion for summary judgment on Plaintiffs' substantive due process claim.

The Court also finds that Defendants are entitled to summary judgment on Plaintiffs' claim that Ordinance 4-15 and Ordinance 4-17 violate their procedural due process rights.  Plaintiffs note that the PMC sets forth a procedure that permits property owners to appeal to a Board of Appeals any decisions of the Township's Council that arbitrarily interfere with their right to

18

own or use their property.  (Pl. Br., at 19-20.)  They also acknowledge that if Defendants effectuated such procedure, they "would have no legitimate procedural due process claim."  (<u>Id.</u> at 20.)  Thus, they argue that Defendants' failure to establish a Board of Appeals violates their procedural due process rights. (<u>Id.</u> at 21.)

The Court disagrees, however, and concludes that the PMC sets forth sufficient procedural protections under the circumstances.  (<u>See</u> Defs. Counter-Stmt. of Undisp. Mat. Facts, at ¶ 18 (stating that "a right of appeal is afforded to any aggrieved party under the ordinances").)  <u>See</u> <u>Mathews</u>, 424 U.S. at 334.  Specifically, as Plaintiffs noted above, the PMC permits property owners to appeal decisions affecting their property rights.  (Pl. Br., at 19-20.)  That the Board of Appeals may not have been established to date does not restrict Plaintiffs or any other aggrieved party from filing an appeal as they are permitted to do under the PMC.  Further, the Township's Council held a public hearing before each of the ordinances at issue were adopted.  (Defs. Br., at 31.)  Plaintiffs received notice of the public hearings and had the opportunity to comment.  (<u>Id.</u>)  Also, a residential rental unit's license may only be revoked under Ordinance 4-17 after notice, in the form of a written complaint, and a hearing before the Council.  (Defs. Stmt. Of Undisp. Mat. Facts, at ¶ 11; <u>see</u> Pl. Stmt. of Uncontested Mat. Facts, at ¶

21.)  Finally, Plaintiffs may appeal any zoning board decision by commencing an action in lieu of prerogative writ in the New Jersey Superior Court, Law Division.  <u>See</u> N.J.Ct.R. 4:69-1. Therefore, after drawing all reasonable inferences in favor of Plaintiffs, the Court finds that Plaintiffs' procedural due process rights were not violated by either Ordinance 4-15 or Ordinance 4-17.

### 2.   Fourteenth Amendment Equal Protection Claim

The Fourteenth Amendment's equal protection clause requires that the government treat all similarly situated persons equally. <u>Wilce v. Dir. of Office of Worker's Comp. Programs</u>, 144 Fed.Appx. 223, 224 (3d Cir. 2005).  Classifications contained in state or local laws that affect fundamental rights, such as those based on race, national origin, alienage, the right to vote, the right of interstate travel, rights guaranteed by the First Amendment, and the right to procreate are subject to strict and exacting scrutiny.  <u>Ward v. Temple Univ.</u>, No. 02-7414, 2003 U.S. Dist. LEXIS 544, at *17 (E.D. Pa. Jan. 2, 2003).  Further, classifications based on sex and illegitimacy are subject to intermediate scrutiny.  <u>Id.</u>  However,

> a classification neither involving fundamental rights
> nor proceeding along suspect lines is accorded a strong
> presumption of validity.  Such a classification cannot
> run afoul of the Equal Protection Clause if there is a
> rational relationship between th disparity of treatment
> and some legitimate governmental purpose.

Heller v. Doe, 509 U.S. 312, 319-20 (1993) (internal citations omitted) (discussing equal protection principles applicable to the Fifth Amendment).

Classifications subject to rational basis review must be upheld if there is "any reasonably conceivable state of facts" that provide a basis for the classification. United States v. Walker, 473 F.3d 71, 77 (3d Cir. 2007). Thus, a classification survives the rational basis test if (1) there is a plausible reason for it, (2) "the legislative facts on which the classification is apparently based rationally may have been considered to be true by the governmental decisionmaker", and (3) the relationship between the classification and the legitimate purpose articulated by the government "is not so attenuated as to render the distinction arbitrary or irrational." Id. at 77; Wilce, 144 Fed.Appx. at 224 (stating same).

Plaintiffs argue that Ordinance 4-15 violates their equal protection rights because, inter alia, (1) "no legitimate governmental interest exists to support the legislative classification in the amendments to the property maintenance code that increase the floor space required for residential rentals only", (2) there is no legitimate governmental purpose for drawing distinctions between both renters and owners and persons 18 years of age and older and those under 18, (3) it was enacted to harm college rentals, (4) the Township already has ordinances in place to address overcrowding, excessive noise, littering,

parking, unkempt properties, underage drinking, and public urination, and (5) "the disparate treatment accorded the affected classes is arbitrary."  (Pl. Br., at 22-25.)  In contrast, Defendants argue that all of the ordinances at issue in this action are rationally related to the legitimate governmental purposes of maintaining tenant safety and preventing overcrowding and related problems.  (Defs. Br., at 34.)  The parties agree that the classifications at issue are not subject to any form of heightened scrutiny, and thus, a rational basis standard of review applies.  (Id.; Pl. Br., at 21-25.)

The Defendants have articulated a "reasonably conceivable state of facts" to support the rental status and age classifications contained in Ordinance 4-15.  See Walker, 473 F.3d at 77.  Specifically, they have explained that increasing the square footage requirements for bedroom and common area space in rental units occupied by persons 18 years of age and over will prevent overcrowding, excessive noise, unsafe living conditions for tenants, and other problems that arise when a rental unit is occupied by too many adults.  Although Plaintiffs may not agree that such classifications actually alleviate these problems more effectively than the PMC did prior to enactment of Ordinance 4-15, the rational basis standard does not require Defendants to demonstrate that they adopted the best approach to a particular problem, but instead requires that they can show some plausible purpose for the ordinances at issue.  Thus, the Court concludes

22

that Ordinance 4-15 does not violate the Fourteenth Amendment's equal protection clause because (1) Defendants have offered a plausible reason for its enactment, (2) the evidence suggests that Defendants rationally considered facts relevant to the complaints they received from Township residents regarding excessive noise, public intoxication, underage drinking, garbage, and overcrowding at rental units occupied by college students before enacting Ordinance 4-15, and (3) the relationship between the age and rental status classifications and the Defendants' articulated purpose in enacting Ordinance 4-15 is not attenuated. Id.  (See Pl. Stmt. of Uncontested Mat. Facts, at ¶ 8; Defs. Stmt. Of Undisp. Mat. Facts, at ¶ 19.)  Therefore, the Court will grant the part of Defendants' cross motion for summary judgment on Plaintiffs' equal protection claim.[2]

---

[2] In count II of the complaint, Plaintiffs allege that Defendants violated their "rights to equal protection, procedural and substantive due process and rights to privileges and immunities of all U.S. Citizens as provided by the U.S. Constitution, the 5th and 14th Amendments and [Section] 1983." (Compl., at ¶ 34 (emphasis added).)  However, the parties do not address any "privileges and immunities" claim in their briefs. If Plaintiffs are asserting a claim under the privileges and immunities clause of the Fourteenth Amendment, the factual basis for such claim is not discernable from the allegations of the complaint.  Further, the Court notes that"[t]he Privileges and Immunities Clause has been largely dormant since the Slaughter-House Cases, 83 U.S. (16 Wall) 36 (1872), restricted its coverage to 'very limited rights of national citizenship'." Craigmiles v. Giles, 312 F.3d 220, 229 (6th Cir. 2002); see Lutz v. York, 899 F.2d 255, 264 (3d Cir. 1990) (stating that the plaintiffs could not rely on the Fourteenth Amendment's privileges and immunities clause because it "has remained essentially moribund since Slaughter House").

### 3.   Fifth Amendment Claims

The Fifth Amendment provides, <u>inter alia</u>, that no person "shall be deprived of life, liberty, or property without due process of law."  U.S. Const. amend. V.  However, "[t]he limitations of the [F]ifth [A]mendment restrict only federal governmental action. . . ."  <u>Nguyen v. U.S. Cath. Conf.</u>, 719 F.2d 52, 54 (3d Cir. 1983).  Accordingly, the rights provided by the Fifth Amendment do not apply to the actions of state and local officials.  <u>Leventry v. Watts</u>, No. 06-193, 2007 U.S. Dist. LEXIS 36256, at *7 (W.D. Pa. May 17, 2007) ("[T]he Fifth Amendment restricts the actions of federal officials, not state actors."); <u>Kopchinski v. Green</u>, No. 05-6695, 2006 U.S. Dist. LEXIS 53790, at *2-*3 (E.D. Pa. Aug. 2, 2006) (finding that because defendants were state actors, plaintiff's Fifth Amendment claims could not survive summary judgment).  Therefore, Plaintiffs cannot maintain a Fifth Amendment claim against Defendants.[3]

### 4.   Dormant Commerce Clause

Article I of the United States Constitution gives Congress the explicit power "[t]o regulate Commerce with foreign nations, and among the several states."  U.S. Const. art. I, § 8.  This clause implicitly prohibits states from mandating "differential

---

[3] If Plaintiffs are asserting a violation of their Fifth Amendment rights against self-incrimination, such claim is not discernable from the allegations of the complaint.  Further, to the extent that they assert an equal protection violation, such claim is properly analyzed under the Fourteenth Amendment.

treatment of in-state and out-of-state economic interests that
benefits the former and burdens the latter." Cloverland-Green
Spring Dairies, Inc. v. PA Milk Mktg. Bd., 462 F.3d 249, 261 (3d
Cir. 2006); see Am. Trucking Ass'n, Inc. v. Whitman, 437 F.3d
313, 318 (3d Cir. 2006).  This implied prohibition is referred to
as the dormant commerce clause.  Cloverland-Green Spring Dairies,
Inc., 462 F.3d at 261; Am. Trucking Ass'n, Inc., 437 F.3d at 318.
To determine the level of scrutiny applicable to a statute or
regulation that affects interstate commerce, the Court must
consider whether the statute or regulation has a discriminatory
purpose or effect.  Am. Trucking Ass'n, Inc., 437 F.3d at 319;
see Cloverland-Green Spring Dairies, Inc., 462 F.3d at 261.

    The party challenging the statute or ordinance has the
burden of proving that it has a discriminatory purpose or effect.
Cloverland-Green Spring Dairies, Inc., 462 F.3d at 261.  The
plaintiff can satisfy this burden by showing that (1) the
challenged statute or ordinance has extraterritorial effects that
adversely affect out-of-state economic production "thereby
forcing 'producers or consumers in other States [to] surrender
whatever competitive advantages they may possess'", or (2) the
object of the challenged statute or ordinance is to disadvantage
out-of-state businesses to the benefit of in-state businesses.
Id. at 261-62 (citations omitted) (addition in original).  If the
plaintiff establishes discrimination, then heightened scrutiny

applies and the burden shifts to the state or local government "to prove that 'the statue serves a legitimate local purpose, and that this purpose could not be served as well by available nondiscriminatory means.'" Id. at 261 (citations omitted); see Am. Trucking Ass'n, Inc., 437 F.3d at 319 (noting that if a regulation discriminates against interstate commerce on its face or in effect, heightened scrutiny applies).  However, if the plaintiff cannot establish that the purpose or effect of the state law discriminates against interstate commerce, then the Court must determine whether the burden imposed on interstate commerce is clearly excessive in relation to the putative local benefits of the law.  Pike v. Bruce Church, Inc., 397 U.S. 137, 142 (1970) ("Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits."); Cloverland-Green Spring Dairies, Inc., 462 F.3d at 262; Am. Trucking Ass'n, Inc., 437 F.3d at 318.

Plaintiffs contend that Ordinance 4-17 violates the dormant commerce clause because it has a discriminatory effect on out-of-state commerce.  (Pl. Br., at 33.)  Specifically, Plaintiffs assert that because Ordinance 4-17 requires that all rental property owners have an agent within 25 miles of the Township,

26

"out-of-state investors can no longer purchase rental properties in Ewing even if they are available 24/7 without an added expense that does not apply to investors within twenty-five miles of Ewing." (<u>Id.</u>)  Thus, they argue that "[t]here is no longer a level playing field." (<u>Id.</u>)  Moreover, Plaintiffs assert that Ordinance 4-17 was unnecessary because the problems associated with Township rental properties, such as overcrowding, noise, traffic,  and disheveled appearance, were already addressed by existing ordinances. (<u>Id.</u> at 34.)  Lastly, Plaintiffs contend that even if the Court finds that Ordinance 4-17 is not discriminatory, the ordinance should still be invalidated under the dormant commerce clause because its burdens outweigh any purported local benefits. (<u>Id.</u> at 34-35.)

Defendants, however, contend that Ordinance 4-17 does not discriminate against interstate commerce on its face or in effect because it (1) does not require only out-of-state landlords to provide the name and address of an agent within the 25-mile radius, but requires all landlords to supply such information, (2) gives landlords more leeway than the state's regulatory scheme, which requires landlords of structures occupied by two or more families to provide the name and address of an agent within the municipality on the registration form, (3) does not in any way prohibit any out-of-state person from purchasing rental property in the Township, and (4) applies regardless of the

citizenship of the landlord.  (Defs. Br., at 37-39.)
Alternatively, Defendants argue that under a <u>Pike</u> balancing test,
Ordinance 4-17 also should be upheld.  (<u>Id.</u> at 39.)  Defendants
state that Ordinance 4-17 does not in any way burden interstate
commerce.  (<u>Id.</u> at 39-40.)  Instead, it provides a local benefit
by ensuring that every landlord has an agent within 25-miles of
the Township to accept notices from tenants, issue receipts to
tenants, and accept service of process on behalf of the landlord.
(<u>Id.</u> at 40.)  Thus, Defendants argue that Plaintiffs' dormant
commerce clause claim also fails under a <u>Pike</u> balancing test.
(<u>Id.</u> at 40.)

The Court finds that summary judgment in favor of Defendants
is appropriate on Plaintiffs' dormant commerce clause claim.
Plaintiffs acknowledge that Ordinance 4-17 is not facially
discriminatory.  (Pl. Br., at 33.)  Further, Plaintiffs failed to
rebut Defendants' prima facie showing that Ordinance 4-17 does
not have a discriminatory effect.  <u>Cloverland-Green Spring</u>
<u>Dairies, Inc.</u>, 462 F.3d at 261.  Plaintiffs do not allege that
Ordinance 4-17 has any extraterritorial implications adversely
affecting out-of-state economic production.  <u>See id.</u> at 261.
Moreover, Ordinance 4-17 applies to all landlords with rental
units within the Township.  It does not differentiate between
those located within New Jersey and those in other states.
Instead, it applies a requirement even-handedly to all landlords
renting properties within its borders.

The object of Ordinance 4-17 is to ensure that there is a person within a 25-mile radius that tenants can contact when they have questions, concerns, notices, or even emergencies related to the property.  If a landlord does not have such an agent, then a tenant might be forced to wait hours or even days for a landlord to visit the area and address his or her concerns with the property.  Thus, the object of Ordinance 4-17 is not to disadvantage out-of-state landlords, but instead is to ensure that all tenants within the Township, whether their landlord is located in-state or out-of-state, have someone they can contact in the immediate vicinity with respect all matters related to the rental property.  See id. at 261-62.  Accordingly, the Court will not apply heightened scrutiny in addressing Plaintiffs' dormant commerce clause challenge to Ordinance 4-17.  See Am. Trucking Ass'n, Inc., 437 F.3d at 319 (noting that if a regulation discriminates against interstate commerce on its face or in effect, heightened scrutiny applies).  Thus, the Court need not consider whether Defendants had a legitimate local purpose for enacting it that could not have been served by other available means.  Cloverland-Green Spring Dairies, Inc., 462 F.3d at 261.

The Court also finds that Ordinance 4-17 does not place an excessive burden on interstate commerce in relation to its putative local benefits.  See id. at 262.  The ordinance does not in any way prohibit or limit out-of-state investors from

purchasing rental properties in the Township.  It simply places an incidental expense on all investors located both in New Jersey and outside of New Jersey who wish to purchase and operate rental properties in the Township.  Additionally, the benefit to tenants and other Township residents of having a designated agent in close proximity to the rental unit that can accept notices, complaints, and service of process outweighs any incidental expense associated with designating such an agent.  Thus, the Court will grant summary judgment in favor of Defendants on Plaintiffs' dormant commerce clause claim.

### C.   Plaintiffs' State Claims

The Court will not exercise supplemental jurisdiction over Plaintiffs' state claims in view of the impending judgment in the Defendants' favor on the federal claims.  See 28 U.S.C. § 1367(c)(3) (authorizing same).  Thus, the Court will (1) deny without prejudice the part of Plaintiffs' motion seeking summary judgment as to the state claims, (2) deny without prejudice the part of Defendants' cross motion seeking summary judgment as to the state claims, and (3) dismiss the state claims without prejudice to reinstate in state court.  See 28 U.S.C. § 1367(d) (tolling limitations period for state-law claim dismissed under Section 1367 while claim pending in federal court and for 30 days after dismissal).

**CONCLUSION**

The Court will (1) deny the part of Plaintiffs' motion seeking summary judgment as to the federal claims, (2) grant the part of Defendants' cross motion seeking summary judgment as to the federal claims, (3) enter judgment in favor of Defendants and against Plaintiffs on the federal claims, and (4) dismiss the state claims without prejudice to reinstate in state court.  The Court will issue an appropriate order and judgment.


                              s/ Mary L. Cooper
                         **MARY L. COOPER**
                         United States District Judge